IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 24-cv-00750-NYW-TPO

CHAD JONES,

    Plaintiff,

v.

MOSES STANCIL,
DR. JESSICA KRUEGER,
JEREMIAH VELASQUEZ,
CHRIS LOVE,
JANE GILDEN,
BAINBRIDGE,
SOPHIE MOORE, and
CHRISTOPHER BUCHANAN,

    Defendants.

---

**ORDER ON MOTION FOR EMERGENCY PRELIMINARY INJUNCTIVE RELIEF**

---

    This matter is before the Court on the Motion for Emergency Preliminary Injunctive Relief ("Motion" or "Motion for Preliminary Injunction") filed by Plaintiff Chad Jones ("Plaintiff" or "Mr. Jones"). [Doc. 18]. Defendants are various employees of the Colorado Department of Corrections ("CDOC"), including Moses Stancil, Dr. Jessica Krueger, Jeremiah Velasquez, Chris Love, Jane Gilden, Bainbridge,[1] Sophie Moore, and Christopher Buchanan (collectively, "Defendants"). Defendants filed a response in opposition to the Motion, [Doc. 33], and Plaintiff has replied, [Doc. 37]. Plaintiff has also submitted two filings of "Direct Evidence" supporting the Motion for Preliminary Injunction,

---

[1] Plaintiff only includes the surname of Defendant Bainbridge in his filings.

[Doc. 32; Doc. 34], which the Court construes as supplemental briefing.[2]  Finally, Plaintiff filed two additional documents that the Court construes as Motions for Hearing on the instant Motion for Preliminary Injunction, [Doc. 26; Doc. 40], to which Defendants have responded, [Doc. 49].  The issues are fully briefed, and the Court finds that oral argument would not assist in the disposition of the Motion for Preliminary Injunction.  For the reasons set forth in this Order, the Motion for Preliminary Injunction is respectfully **DENIED**.  The Motions for Hearing are **DENIED** as moot.

## BACKGROUND

The Court takes the following facts from Plaintiff's Amended Prisoner Complaint, [Doc. 9, filed May 28, 2024], and supplemental briefing, [Doc. 32; Doc. 34].  Plaintiff is an inmate in the custody of CDOC and currently incarcerated at the Colorado Territorial Correctional Facility.  *See generally* [Doc. 9].  He was previously housed at the Arkansas

---

[2] Plaintiff also filed a letter alleging that Defendants provided his medical records to their counsel without his permission.  *See* [Doc. 38].  While the Court takes no position on the propriety of Defendants' disclosure of Plaintiff's medical records, the Court notes that Plaintiff has placed his medical treatment at issue by filing his Eighth Amendment claims, and the medical records related to his OUD are central to his claims.  *Cf. Fischer v. Dunning*, 574 F. App'x 828, 831 (10th Cir. 2014) (affirming dismissal of inmate's Eighth Amendment claims where inmate refused to release pre-incarceration medical records that defendants needed to meaningfully defend against his claims).  It is also not clear that Mr. Jones is concerned about the public disclosure of his medical records, as he has filed his own records publicly.  *See, e.g.*, [Doc. 32 at 2].  Out of an abundance of caution, the Court **ORDERS** that [Doc. 33-1] be **PLACED** under Level 1 Restriction to allow Mr. Jones to move for restriction.  *See, e.g.*, *Moore v. Thomas*, 653 F. Supp. 2d 984, 1011 (N.D. Cal. 2009) (construing inmate's request for injunction against defendants' filing of his medical records without his consent as a motion to seal).  To the extent Mr. Jones seeks restriction, he must file a motion to restrict in compliance with D.C.COLO.LCivR 7.2(c) no later than January 6, 2025.  If Mr. Jones does not seek restriction by that date, the Court will order the Clerk of the Court to unrestrict [Doc. 33-1] without any further notice.  The Court **ADVISES** Defendants that, in an abundance of caution, medical records should be filed under restriction in the first instance, to allow Plaintiff an opportunity to move to restrict pursuant to D.C.COLO.LCivR 7.2 and the Court to consider the need for any restriction prior to public access.

Valley Correctional Facility, another prison managed by CDOC. [*Id.* at 8]. He asserts claims against Defendants under 42 U.S.C. § 1983, alleging violations of the Eighth and Fourteenth Amendments related to his medical care. See [*id.* at 6–11].

Plaintiff alleges that he suffers from Hepatitis C, chronic pain, and opiate use disorder ("OUD"). [*Id.* at 8]; *see also* [Doc. 32 at 3]. He alleges that, on September 12, 2023, he asked to be placed on CDOC's Medically Assisted Treatment ("MAT") program to treat his heroin and fentanyl use. [Doc. 9 at 8]. Before he had his appointment, Plaintiff alleges, he was "caught using" on September 18, 2023, and he initiated an "Emergency" with medical staff the next day. [*Id.*]. Plaintiff does not provide a precise timeline for other events, but he generally alleges that he sought the medications Subutex and Suboxone from various medical practitioners as a treatment for his OUD and chronic pain. [*Id.* at 8–10]. He alleges that at least one medical practitioner that he consulted after filing the Amended Complaint agreed that Subutex would be an appropriate treatment option. [Doc. 32 at 2]. Despite Plaintiff's efforts to obtain a Subutex prescription, Defendants declined to prescribe Subutex and only offered Naltrexone, an alternative OUD treatment. [Doc. 9 at 8, 10]. Plaintiff alleges that he cannot take Naltrexone because he experienced adverse side effects when he "tried [it] on the street." [Doc. 9 at 8]. Various Defendants allegedly informed Plaintiff that, under CDOC policy, he does not qualify for Subutex. [*Id.* at 6–7, 10].

Plaintiff asserts that he is entitled to a Subutex prescription because Colo. Rev. Stat. § 17-26-104.9 (2024) grants him the right to choose a particular medication to treat his OUD, and his facility "must provide the medication requested." [*Id.* at 8–9]. He alleges that Defendants' repeated rejections of his requests for Subutex violate § 17-26-104.9.

3

[*Id.* at 6–9]. Plaintiff asserts that Defendants' failure to provide him with a Subutex prescription constitutes "grossly inadequate treatment" and deliberate indifference in violation of the Eighth and Fourteenth Amendments. [*Id.*]. He seeks a court order requiring Defendants to provide him Subutex as well as compensatory and punitive damages. [*Id.* at 13]. In the Motion, he asks the Court for a preliminary injunction ordering Defendants to prescribe him Suboxone or Subutex[3] during the pendency of this case. [Doc. 18]; *see also* [Doc. 9 at 13 (requesting relief under Rule 65)].

In the Response, Defendants argue that Plaintiff has not satisfied the requirements for a preliminary injunction. *See generally* [Doc. 33]. Defendants argue that Plaintiff has not shown that he is at risk of imminent irreparable harm, that he is unlikely to succeed on the merits of his § 1983 claims, and that a preliminary junction would harm both CDOC and the public interest. [*Id.* at 2–3]. The Court considers the Parties' arguments below.

## LEGAL STANDARDS

### I.   Rule 65

Federal Rule of Civil Procedure 65 authorizes the Court to enter preliminary injunctions and issue temporary restraining orders. Fed. R. Civ. P. 65(a), (b). "Preliminary injunctions are extraordinary remedies requiring that the movant's right to relief be clear and unequivocal." *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1223 (10th Cir. 2018). A party seeking preliminary injunctive relief must make a four-part showing: (1) that the movant has a likelihood of success on the merits of his

---

[3] In the Amended Complaint, Plaintiff asks for Subutex, [Doc. 9 at 13]; in the Motion, he asks for Suboxone, [Doc. 18 at 4]. As Defendants point out, Subutex and Suboxone are different medications, although both treat OUD. [*See* Doc. 33 at 2 n.2]; *see also* [Doc. 33-1 at 3, ¶ 13]. The Court does not resolve this discrepancy for purposes of the Motion because it finds that preliminary injunctive relief is inappropriate as to any medication.

4

claims; (2) that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *Petrella v. Brownback*, 787 F.3d 1242, 1257 (10th Cir. 2015). A party seeking an injunction must demonstrate that "*all four* of the equitable factors weigh in its favor," *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013), and a "plaintiff's failure to prove any one of the four preliminary injunction factors renders its request for injunctive relief unwarranted," *Vill. of Logan v. U.S. Dep't of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014).

The primary goal of a preliminary injunction is to preserve the pre-trial status quo. "Status quo" is defined as "the last uncontested status between the parties that preceded the controversy until the outcome of the final hearing." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005) (quotation omitted). Therefore, courts view the following types of injunctions with caution: (1) preliminary injunctions that alter the status quo; (2) preliminary injunctions that require the nonmoving party to take affirmative action, i.e., "mandatory" preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief he would be entitled to if he prevailed in a full trial. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). Whether to issue a preliminary injunction lies within the sound discretion of the trial court. *See id.*

## II. Pro Se Filings

In applying the above principles, this Court is mindful that Mr. Jones proceeds pro se. The Court thus affords his papers and filings a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam). But the Court cannot and does not act as his advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and applies the same

5

procedural rules and substantive law to Plaintiff as to a represented party, *see Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2002); *Dodson v. Bd. of Cnty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

## ANALYSIS

Plaintiff's Motion asks the Court to order Defendants to provide him with a prescription for his OUD treatment of choice. At the outset, the Court notes that such an injunction falls within all three categories of preliminary injunctions that the U.S. Court of Appeals for the Tenth Circuit ("Tenth Circuit") has identified as disfavored. The preliminary injunction Plaintiff requests would (1) alter the status quo; (2) require Defendants to act; and (3) provide Plaintiff most, if not all, of the relief he could receive at trial. *See RoDa Drilling Co.*, 552 F.3d at 1208. A party requesting a disfavored preliminary injunction faces a "heightened standard." *Fish v. Kobach*, 840 F.3d 710, 723–24 (10th Cir. 2016). This standard requires Plaintiff to "make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Id.* (quotation and brackets omitted).

**I.    Likelihood of Success on the Merits**

Plaintiff argues that he is likely to succeed on the merits of his underlying § 1983 claims because Defendants have acted with deliberate indifference to his medical needs. First, he argues that Defendants have denied him his right to choose a medication for his OUD, a choice Plaintiff asserts he is entitled to make under Colo. Rev. Stat. § 17-26-104.9. [Doc. 18 at 2–3]. Second, construing Plaintiff's filings liberally, he argues that Defendants' refusal to prescribe him Subutex or enroll him in the MAT program amounts to an unconstitutional failure to treat his OUD. *See* [Doc. 37 at 5–6]. Defendants respond

that § 17-26-104.9 does not apply to CDOC facilities and therefore does not apply to Plaintiff, and that Defendants' failure to provide Plaintiff his preferred treatment does not constitute deliberate indifference. [Doc. 33 at 7, 11].

The Court begins with Plaintiff's assertion that § 17-26-104.9 entitles him to the medication of his choice. Defendants correctly point out that an alleged violation of a state statute cannot sustain a claim under § 1983, which provides a cause of action for deprivations of federal rights. *See Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)) ("To the extent [plaintiff] seeks relief for alleged violations of state statutes and prison regulations, however, he has stated no cognizable claim under § 1983."); *see also Graham v. Connor*, 490 U.S. 386, 393–94 (1989) ("[Section 1983] merely provides a method for vindicating federal rights elsewhere conferred." (quotation omitted)). The Court further observes that § 17-26-104.9 applies only to certain categories of "facility." Although Plaintiff understandably reads "facility" in a general sense, the statute expressly limits its definition of "facility" to local jails, municipal jails, and contractually established multijurisdictional jails. *See* Colo. Rev. Stat. § 17-26-104.9(a); *see also* § 17-26.5-101. Based on Plaintiff's filings, it appears that the facilities where he has been housed are operated exclusively by CDOC, and therefore fall outside the scope of § 17-26-104.9. Accordingly, insofar as Plaintiff invokes § 17-26-104.9 as a basis for his constitutional claims, the Court concludes that he has not met his heightened burden of establishing a strong likelihood of success.

The Court turns to Plaintiff's broader claim that Defendants were deliberately indifferent to his OUD. The "deliberate indifference" standard governs claims under the

7

Eighth Amendment that challenge a prison official's denial of medical care to an inmate. *E.g.*, *Estelle v. Gamble*, 429 U.S. 97 (1976). An official may be deliberately indifferent to a prisoner's medical need where that official "prevent[s] an inmate from receiving treatment or den[ies] him access to medical personnel capable of evaluating the need for treatment." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). The test for deliberate indifference includes both an objective component and a subjective component. *Id.* at 1209. The objective component requires that the alleged medical need be "sufficiently serious." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective component requires evidence that the prison official had a "culpable state of mind." *Id.* (citing *Estelle*, 429 U.S. at 106). Mere negligence, however, does not establish culpability. *Farmer*, 511 U.S. at 835. Instead, this requirement is satisfied if the official "knows of and disregards an excessive risk to inmate health or safety." *Sealock*, 218 F.3d at 1209 (quoting *Farmer*, 511 U.S. at 837); *see also Mata*, 427 F.3d at 745 (characterizing subjective component inquiry as: "[W]ere the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?").

Assuming without deciding that OUD is a sufficiently serious medical need, the Court proceeds to the subjective component of deliberate indifference. Plaintiff alleges that Defendants denied his requests to enter the MAT program and only offered him Naltrexone, rather than Subutex or Suboxone, as an OUD treatment. [Doc. 9 at 8, 10–11]. He asserts that Defendants made these decisions despite their knowledge that he suffers from OUD and experiences side effects from Naltrexone. [*Id.* at 8, 10]; *see also* [Doc. 18 at 2–3].

8

The record before the Court, however, does not support these statements. *See generally* [Doc. 33-1]. For one, the precise reason Plaintiff cannot take Naltrexone is unclear. In Plaintiff's Amended Complaint, he alleges that he cannot take Naltrexone because of the side effects he experienced when taking it "on the street", including hearing "voices" and urinating and defecating blood. [Doc. 9 at 8]. In his Reply, he suggests that he is allergic to Naltrexone, experienced anaphylaxis from it, and "was removed" from taking the drug. [Doc. 37 at 2, 6]. In the record of Plaintiff's "MAT Encounter" with Defendant Bainbridge, the medical notes state that Plaintiff declined Naltrexone—and, by extension, MAT enrollment—because he did not want to undergo the required ten-day detoxification period before beginning Naltrexone. [Doc. 33-1 at 7]; *see also* [*Id.* at 3, ¶ 10]. In another medical record, Defendant Krueger reported that Plaintiff had denied any prior Naltrexone use. [*Id.* at 31]. Defendant Krueger also noted that Plaintiff had declined MAT enrollment and Naltrexone treatment, and that she reiterated to Plaintiff that he did not qualify for Suboxone under CDOC policy. [*Id.*]. Dr. Randolph Maul, the Chief Medical Officer for CDOC, stated in a declaration that his review of Plaintiff's medical records revealed no allergy to Naltrexone. [*Id.* at 1, 4–5]. These records of Plaintiff's numerous appointments and discussions with Defendants as to his OUD do not indicate that Defendants knowingly disregarded Plaintiff's condition. *See Self v. Crum*, 439 F.3d 1227, 1232–33 (10th Cir. 2006) ("[W]here a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law."). Nor has Mr. Jones produced any pre-incarceration medical records or other evidence that reflects a prior adverse reaction to Naltrexone or, as importantly, his

9

disclosure of such medical records or other evidence to Defendants.

Rather than showing deliberate indifference, Plaintiff's allegations and medical records demonstrate that Defendants have made efforts to treat Plaintiff's OUD and enroll him in the MAT program. It appears that Plaintiff rejected treatment because he prefers other medications over Naltrexone. And while Naltrexone and Suboxone may both be used to treat OUD, Dr. Maul explains that a CDOC inmate may only qualify for Suboxone if he has a demonstrated allergy to Naltrexone, finds that Naltrexone is ineffective after one year of use, or has a pre-existing prescription for Suboxone. [Doc. 33-1 at 2–3, 5].

As Defendants point out, a disagreement over the method of treatment does not establish an Eighth Amendment violation.[4] [Doc. 33 at 17]; *see also, e.g.*, *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) ("Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation."). Other courts have similarly described an inmate's request for Suboxone instead of other OUD medications as a disagreement over treatment, rather than deliberate indifference. *See Collins v. Amjad*, No. 5:24-cv-00105, 2024 WL 4171368, at *4 (N.D. W. Va. July 19, 2024) (denying preliminary injunction for plaintiff challenging prison official's recommendation of Naltrexone instead of Suboxone or similar drugs), *report and recommendation adopted*, 2024 WL 3799446 (N.D. W. Va. Aug. 13, 2024); *Lamy v. N.H. Dep't of Corr. Comm'r*, No. 21-cv-00229-SM, 2022 WL 2670390, at *5

---

[4] While Plaintiff has submitted evidence that at least one medical provider agreed that Subutex would be a potential treatment for his OUD, that provider did not state that Subutex is the *only* appropriate treatment for his OUD. *See* [Doc. 32 at 2]. Nor did that medical provider indicate that Mr. Jones could not have Naltrexone, or that Subutex was preferred over Naltrexone. Even if that were the case, one medical professional's decision not to follow a treatment plan proposed by another does not constitute deliberate indifference. *See Bismark v. Fisher*, 213 F. App'x 892, 896–97 (11th Cir. 2007).

10

(D.N.H. June 14, 2022) (dismissing Eighth Amendment claim where inmate failed to allege that prison officials' failure to prescribe Suboxone was anything more than "a professional decision about which form of treatment is adequate under the circumstances"), *report and recommendation adopted*, 2022 WL 2669533 (D.N.H. July 8, 2022).  And because it appears that Defendants' decisions to offer Naltrexone as an OUD treatment are grounded in their medical judgment, the Court cannot conclude that Plaintiff is substantially likely to succeed on his claim that Defendants have disregarded his OUD. *See Self*, 439 F.3d at 1232–33 ("[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment."); *see also Ledoux v. Davies*, 961 F.2d 1536, 1537 (dismissing Eighth Amendment claim where inmate plaintiff claimed he needed additional medication beyond what was prescribed by treating physician).[5]  Plaintiff therefore fails to satisfy the first requirement for a preliminary injunction.

## II.     Irreparable Harm

Although the Court's finding that Plaintiff's claims are not substantially likely to succeed means that the Motion fails, the Court additionally considers whether Plaintiff has demonstrated that he will suffer irreparable harm without the requested injunction. "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263,

---

[5] To the extent Plaintiff challenges Defendants' decision to provide him with pain medications other than Subutex or Suboxone, his Eighth Amendment claims are unlikely to succeed for similar reasons.  *See Todd v. Bigelow*, 497 F. App'x 839, 842 (10th Cir. 2012) ("[A] difference of opinion with the medical staff as to the optimal pain-management regimen does not amount to deliberate indifference."); *Garcia v. Andrade-Barraza*, Civ. No. 19-1138 JCH/JFR, 2021 WL 3116053, at *11 (D.N.M. June 15, 2021) (collecting cases), *report and recommendation adopted*, 2021 WL 3109951 (D.N.M. July 22, 2021).

1270 (10th Cir. 2018) (quotation omitted).  "To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'"  *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).  The alleged harm must also be imminent:  "the party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."  *Schrier*, 427 F.3d at 1267 (quotation omitted).  "[A] speculative or theoretical injury will not suffice."  *State v. U.S. EPA*, 989 F.3d 874, 884 (10th Cir. 2021).  Demonstrating the likelihood of imminent irreparable injury is "not an easy burden to fulfill."  *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003).

Plaintiff states that, without Subutex or Suboxone, he is "on [his] way to death," presumably from an overdose [Doc. 18 at 4].  This is consistent with Plaintiff's prior statement, as reported in his medical records, that he plans to continue injecting himself with illicit Suboxone or other opioids "until he dies."  [Doc. 33-1 at 22].  The Court does not dismiss or diminish these statements, nor is it ignorant of the danger that opioids present to individuals who are addicted to them.  However, as Defendants point out, Plaintiff has access to ongoing medical monitoring and "rapid-response overdose care around the clock" that significantly diminishes his risk of overdose and death.  [Doc. 33 at 6]; *cf. Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008) (holding that showing irreparable harm is "possible" but not "likely" is insufficient for preliminary injunction).  The Court recognizes that a Subutex or Suboxone prescription might help Plaintiff, and that the detoxification period required by Naltrexone—along with the withdrawal symptoms that often accompany Naltrexone use, [Doc. 33-1 at 3 ¶¶ 9–10]—may be extraordinarily

difficult. But Plaintiff's risk of overdose arises from the combination of his ongoing drug use and refusal to enroll in the MAT program on a Naltrexone prescription.[6] Thus, a preliminary injunction requiring a Suboxone (or Subutex) prescription is not necessary to protect Plaintiff from harm when Plaintiff can reduce or eliminate the risk of overdose by taking Naltrexone as an OUD treatment. *Chamberlain v. Va. Dep't of Corr.*, No. 7:20-cv-00045, 2020 WL 5778793, at *5–6 (W.D. Va. Sept. 28, 2020) (finding no showing of irreparable harm where plaintiff sought prescription for Suboxone instead of Naltrexone but provided no supporting medical evidence or justification other than his desire to avoid Naltrexone's side effects).

Because Plaintiff has not demonstrated a likelihood of success on the merits or an imminent irreparable harm, he is not entitled to the relief he requests. The extraordinary remedy of a mandatory preliminary injunction is therefore not warranted at this time, and the Court need not reach the remaining requirements for a preliminary injunction. The Motion for Preliminary Injunction is respectfully **DENIED**.

## CONCLUSION

For the reasons set forth herein, it is **ORDERED** that:

(1)   The Motion for Preliminary Injunction, [Doc. 18], is **DENIED**;

(2)   The Motions for Hearing, [Doc. 26; Doc. 40], are **DENIED as moot**; and

(3)   Exhibit A to Defendant's Response to the Motion for Preliminary Injunction, [Doc. 33-1], is **PLACED** under Level 1 Restriction until January 6, 2025.

---

[6] Dr. Maul explains that Plaintiff cannot obtain a Suboxone prescription until he takes Naltrexone under medical supervision and establishes that his asserted allergy to Naltrexone actually exists. [Doc. 33-1 at 3, 5].

DATED:  December 6, 2024              BY THE COURT:

_____
Nina Y. Wang
United States District Judge

14